UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



| | | |
|---|---|---|
| **CARL CAMERA** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | **NO. 1:13-cv-876** |
| *V.* | § | |
| | § | |
| **DELL INC., MICHAEL S. DELL,** | § | |
| **SHANTANU NARAYAN, JAMES W.** | § | |
| **BREYER, DONALD J. CARTY, JANET** | § | |
| **F. CLARK, LAURA CONIGLIARO,** | § | |
| **KENNETH M. DUBERSTEIN, H. ROSS** | § | |
| **PEROT, JR., ALEX J. MANDL, KLAUS** | § | |
| **S. LUFT, GERALD J. KLEISTERLEE,** | § | |
| **THOMAS W. LUCE, III, SAMUEL A.** | § | |
| **GUESS, JANET WRIGHT, GARY** | § | |
| **BISCHOPING, and JOHN DOES 1-10,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, Carl Camera ("Plaintiff"), individually, as a representative of the Dell Inc.,

401(k) Plan (the "Plan"), and on behalf of a class of similarly situated participants in the Plan,

respectfully submits this Original Class Action Complaint as follows:

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.      Plaintiff, a participant in the Plan, brings this action against Dell, Inc. ("Dell" or

the "Company) and others individually, as a representative of the Plan for Plan-wide relief and

on behalf of all participants in the Plan for whose individual accounts the Plan was invested in

the Dell Inc. Stock Fund (the "Fund") and whose holdings in the Fund were partially liquidated

pursuant to Section 4.2(c) of the Plan in October 2012 (the "Class"). Plaintiff brings this action

1

on behalf of both the Plan and the Class pursuant to §§ 502(a)(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1) and (2).

2.      This case arises out of Dell's decision to force investors in its own retirement plan to sell shares in the Dell Inc. Stock Fund at an unfair price, at a time when Dell was actively negotiating a private buyout of the Company and *knew* those market prices did not reflect fair value.

3.      In March 2010, Dell announced that participants in the Plan would no longer be allowed to make contributions or transfers to the company stock portion of their account (*i.e.*, the Fund) if their holdings in the Fund exceeded 20% of their total account balance. According to the Company these restrictions were designed to "limit investment levels in the Dell Inc. Stock Fund," but did not require participants to sell or liquidate any portion of their accounts in order to reduce their existing Fund holdings down to the 20% threshold.

4.      That changed in May 2012, when Dell announced a mandatory reallocation of existing balances of individual participant accounts in which holdings in the Dell Stock Fund exceeded 20% of the participant's total balance. On June 14, 2012, Dell executed Amendment Four to the Plan, which reversed its earlier policy to allow existing Fund holdings in excess of 20%, and instead mandated that all such holdings in excess of the 20% threshold must be liquidated. This mandatory sale of Fund shares was tasked to a company called Evercore Trust, with instructions that it was to be implemented with respect to all Participants whose Fund holdings exceeded the 20% threshold after the close of trading on October 19, 2012.

5.      In the meantime, in the summer of 2012 Michael Dell began exploring a private buyout of the company, and in August 2012 formally announced his intentions to the Dell board of directors. By early October 2012, Dell's board of directors and upper management was

2

actively involved in buyout discussions which valued the company at share prices in the range of $12-14 per share, well in excess of the then-current market value.[1] This knowledge of a looming buyout offer at an above-market price was widely shared among senior Dell management— including the company directors and Plan fiduciaries named as Defendants in this case.

6.      Unfortunately, despite the knowledge that the value of Dell shares would jump dramatically once the buyout offer became public, no one with a fiduciary duty to Plan participants took any action to ensure that the October 2012 forced liquidation date was cancelled or postponed until such time as the buyout was consummated, or at least until negotiations could be reflected in the market price of the shares. Instead, Defendants allowed the forced sale to proceed, and those affected by the mandatory reallocation were involuntarily forced out of their "excess" shares of the Fund at a time when the market price of Dell shares was around nine and a half dollars per share.

7.      Under these circumstances the Plan fiduciaries should have (1) postponed the date on which the affected holders of the Dell Stock Fund would be forced out of their position until such time as the market price fairly reflected the buyout negotiations; or (2) cancelled the compulsory reallocation altogether, since a private buyout would likely result in the purchase of *all* outstanding Dell shares at the higher buyout price, which would completely eliminate the market exposure of Plan participants to Dell company stock and render moot the underlying justification of the compulsory reallocation. The Defendants did neither.

8.      Plaintiff alleges that it was imprudent to impose a mandatory reallocation on participants in the Dell Stock Fund by the mandatory deadline imposed in Amendment Four, in

---

[1] In February 2013, Michael Dell and Silver Lake Partners announced an offer to take Dell private at $13.65 per share. They subsequently made a conditional offer of $13.75 a share on July 24, 2013, contingent on certain changes to the voting rules. On August 2, 2013, the Company announced a revised agreement under which the buyout partners would pay $13.75 per share, plus a special 13-cent dividend and a guarantee that the Company's regular quarterly 8-cent dividend would be paid for the third quarter.

effect forcing certain Fund participants to sell at prices which the Plan fiduciaries knew to be unfair and which did not reflect market-moving information of which Defendants were aware. Plaintiff also alleges that those Defendants who had a duty to appoint and monitor fiduciaries with authority or control over Plan assets breached their duty to appoint and monitor.

9.      As more fully set forth below, Defendants breached their fiduciary duties owed to the Plan and its participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550. As a result of these breaches, Defendants are liable to the Plan for all losses resulting from each such breach of fiduciary duty.

## II. JURISDICTION AND AVENUE

10.      Plaintiff's claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

11.      This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan is administered, where the breaches took place and where one or more defendants reside or may be found.

## III. THE PARTIES

### Plaintiff

13.      Plaintiff Carl Camera is a resident of Austin, Texas. He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

14.      Defendant Dell is a Delaware corporation with its principal place of business at One Dell Way, Round Rock, Texas, 78682, and may be served with process through its registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Dell

engages in the development, manufacture, and marketing of computer products. Dell is the Plan's sponsor and a fiduciary of the Plan.

15.     Defendant Janet Wright ("Wright") is Dell's Vice President and "General Corporate Counsel" and a member of the Committee.  She may be served with process at Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

16.     Defendant Samuel A. Guess ("Guess") is Dell's Vice President – Global Compensation and Benefits, and a member of the Committee.  He may be served with process at One Dell Way, RR 1-33, Round Rock, Texas 78682.

17.     Defendant Gary Bischoping ("Bischoping") is Dell's Vice President and Treasurer and a member of the Committee. He may be served with process at Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

18.     The Board of Directors of the Company had the duty to appoint and monitor the members of the Benefits Administration Committee (the "Committee") pursuant to Article XI of the Plan. Each of the following who were members of the Board of Directors during the relevant time period are named as Defendants (collectively the "Director Defendants"): Michael S. Dell, Shantanu Narayan, James W. Breyer, Donald J. Carty, Janet F. Clark, Laura Conigliaro, Kenneth M. Duberstein, H. Ross Perot, Jr., Alex J. Mandl, Klaus S. Luft, Gerald J. Kleisterlee, and Thomas W. Luce, III.

19.     Defendant Michael S. Dell may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

20.     Defendant Shantanu Narayan may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

21.     Defendant James W. Breyer may be served with process c/o Board Liaison, Dell, Inc., One Dell Way One Dell Way, RR 1-33, Round Rock, Texas 78682.

22.     Defendant Donald J. Carty may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

23.     Defendant Janet F. Clark may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

24.     Defendant Laura Conigliaro may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

25.     Defendant Kenneth M. Duberstein may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

26.     Defendant H. Ross Perot, Jr., may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

27.     Defendant Alex J. Mandl may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

28.     Defendant Klaus S. Luft may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

29.     Defendant Gerald J. Kleisterlee may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

30.     Defendant Thomas W. Luce, III may be served with process c/o Board Liaison, Dell, Inc., One Dell Way, RR 1-33, Round Rock, Texas 78682.

31.     Defendants John Does 1-10 are members of the Committee and, therefore, are fiduciaries of the Plan and/or exercised authority or control over the Plan, Plan assets and/or the Fund. Upon information and belief, these other members of the Committee were senior officers

6

and employees with the Company who served on the Committee without additional compensation in the ordinary course of their employment. As a result of their senior positions with the Company, they knew or should have known all of the facts alleged herein. (Hereinafter, Wright, Guess, Bischoping, and John Does 1-10 are referred to as the "Committee Defendants").

## IV. CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action in part as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all participants in the Plan for whose individual accounts the Plan invested in units of the Dell Stock Fund and whose individual holdings in the Dell Stock Fund exceeded 20% of their Plan assets as of October 19, 2012 (the "Class").

33.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are hundreds, and perhaps thousands, of members of the Class. On information and belief, the Plan has roughly 30,000 Participants with account balances.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

> (a) Whether Defendants were fiduciaries to the Plan and/or its participants;
>
> (b) Whether Defendants breached their fiduciary duties by the conduct described below;
>
> (c) Whether the Plan and the Class members were injured by such breaches; and

(d) Whether the Class is entitled to damages.

35.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.     Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38.     A class is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## V. <u>DESCRIPTION OF THE PLAN</u>

39.     The Plan is an employee benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan is to provide retirement benefits to Plan Participants.

40.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provided for individual accounts for each Participant and for benefits based solely upon the amount contributed to those accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's account. As a result, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

41.     The Plan is a voluntary contribution plan whereby Participants make contributions to the Plan. The Plan describes these as Salary Reduction Contributions. Plan[2] § 3.1 (collectively, the "Employee Contributions"). These Employee Contributions could range from 0-50% of eligible compensation, subject to certain limitations. *Id.* Dell made Employer Matching Contributions which matched the Employee Contributions in the amount of 100% of eligible contributions which do not exceed five percent (5%) of each participant's annual compensation, and additional discretionary Employer Retirement Savings ("Employer Contributions"). Plan §§ 3.2 and 3.3. The Employee Contributions were held in each Participant's Salary Reduction Contribution Account, and the Employer Contributions were held in each Employer Contribution Account. Plan § 4.2(a), (b). The assets of the Plan are held in trust pursuant to an agreement between Dell and The Bank of New York Mellon as Plan Trustee.

---

[2] References to the "Plan" are to the Dell Inc. 401(k) Plan, as amended and restated effective January 1, 2009.

9

42.     Participants could cause the Plan to invest the assets held in each of their accounts in the Trust among a number of Investment Funds offered by the Plan. One of the Investment Funds which Participants could select for the investment of Plan assets was the Dell Stock Fund. In 2012, Evercore Trust Company ("Evercore") was appointed as a fiduciary and investment manager for the Dell Stock Fund.

## VI. DEFENDANTS WERE FIDUCIARIES

43.     At all times relevant to this Complaint, Defendants were fiduciaries of the Plan because:

(a)     they were so named; and/or

(b)     they exercised authority or control with respect to the management or disposition of the Plan's assets; and/or

(c)     they exercised discretionary authority or discretionary control with respect to management of the Plan; and/or

(d)     they had discretionary authority or discretionary responsibility in the administration of the Plan.

*See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). A person is a fiduciary, even if a plan does not name him as such or by its terms assign fiduciary duties to him, if he engages in fiduciary activities. The test for whether a person or entity is a fiduciary is functional and based on actual conduct. Those who have control over management of a plan or plan assets are fiduciaries regardless of the labels or duties assigned to them by the language of a plan. Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

10

44.     A fiduciary may not avoid his fiduciary responsibilities under ERISA by relying solely on the language of the plan documents. While the basic structure of a plan may be specified within limits by the plan sponsor, the fiduciary may not follow the plan document if to do so leads to an imprudent result under ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

45.     Dell is a fiduciary because it is the "Employer" vested with overall responsibility for the Plan, and through the Committee is "Administrator" of the Plan. Plan §§ 1.3, 10.1, 11.3. Additionally, upon information and belief, Dell was a fiduciary because it managed, administered and operated the Plan and Plan assets and disseminated Plan communications to Participants; on information and belief, these functions were performed by Dell employees acting in the scope of their day to day duties and, in particular, by Dell human resources, legal, corporate communications, finance and treasury personnel.

46.     The Director Defendants were fiduciaries of the Plan because they had the fiduciary duty to appoint and monitor the members of the Committee. Plan §§ 10.1, 11.1. The Directors had the power and responsibility to appoint as members of the Committee persons with sufficient education, knowledge and experience to inform themselves as necessary to perform their duties as Committee members. The Director Defendants also had an ongoing duty to ensure that the persons appointed to the Committee were fully informed and performing their duties properly with respect to investment options under the Plan, the investment of the assets of the Plan, and the protection of the interests of Plan Participants.

47.     The Committee Defendants were fiduciaries because the Committee was the Plan Administrator. The Committee is a "named fiduciary" with respect to the general administration of the Plan. Plan § 11.3. In particular, the Committee Defendants had the fiduciary duty to monitor Plan investments, select and monitor prudent Investment Funds (including the Fund),

and select, monitor, and appropriately instruct any Independent Fiduciary, and to direct the Trustee as to the exercise of rights or privileges to acquire, convert or exchange shares in the Fund. Plan § 11.3. Moreover, on information and belief, the Committee Defendants were appointed and served on the Committee as part of and in the ordinary course of their job responsibilities without any additional compensation. Accordingly, the Company is responsible and liable for their actions.

## VII. FIDUCIARY DUTIES UNDER ERISA

48.      ERISA imposes strict statutory duties upon qualified plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

49.      **The Duty of Loyalty.** ERISA imposes on a plan fiduciary the duty of loyalty—that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." *Id.* The ERISA duty of loyalty is the highest known to the law, and requires the fiduciary to act with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

50.      **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence—that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar

with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

51.     **The Duty to Inform.** The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: 1) a negative duty not to misinform; 2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and 3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries on the one hand, and the Participants on the other.

52.     **The Duty to Investigate and Monitor Investment Alternatives.** With respect to a pension plan such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of the investment alternatives in the Plan including employer securities, to ensure that each investment is a suitable option for the Plan.

53.     **The Duty to Monitor Appointed Fiduciaries.** Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries thus appointed. The duty to monitor entails both giving appropriate instructions and information to, and reviewing the actions of, the appointed fiduciaries.

54.     **The Duty Sometimes to Disregard Plan Documents.** A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so leads to an imprudent result. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

55.   **Co-Fiduciary Liability.** A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

56.   **Non-Fiduciary Liability.** Under ERISA non-fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## VIII.  SUBSTANTIVE ALLEGATIONS

57.   Dell is a multinational computer technology corporation specializing in the development, manufacture and sale of computers and information technology products. Presently listed at number 51 in the Fortune 500, Dell is one of the largest technology companies in the world and employs more than 100,000 people worldwide. Plaintiff Carl Camera is a 51-year old software engineer and web designer who worked for Dell from 1998 to 2001. He lives in Austin with his wife and two sons.

14

A.    **Dell's Decision to Implement Mandatory Reallocation of Individual Accounts in the Fund**

58.    The Fund is an investment alternative under the Plan. A participant's investment in the Fund is measured in Units; each Unit represents an interest in shares of Dell common stock plus a varying amount of short-term liquid investments. Prior to 2010, the Plan did not place any restrictions on the purchase of Units in the Plan, other than a limitation on Trustee purchases during periods in which such purchases were "restricted by law or regulation." *See* Plan § 4.2. In March 2010, Dell executed Amendment One to the Plan, which was designed to "limit investment levels in the Dell Inc. Stock Fund on a prospective basis" by limiting the ability of Participants to add new investments in the Fund if the value of their individual accounts consisted of twenty percent (20%) or more of Fund Units. *See* Amendment One to the Dell Inc. 401(k) Plan, executed March 29, 2010 ("Amendment One"). Amendment One expressly provided that these limitations on new purchases did not include an obligation to sell any portion of the Fund during periods when more than 20% of a Participant's investment account was invested in the Fund.

59.    By letter dated May 20, 2012, Evercore Trust Company ("Evercore") announced that it had been appointed as an "independent fiduciary and investment manager" for the Fund. The Evercore letter announced that Dell would implement a "mandatory reallocation" of the portion of Participants' investment in the Fund that represented more than 20% of their total Plan account. The letter invited Participants to voluntarily transfer assets out of the Fund up until October 19, 2012, but indicated that it would conduct forced sales if the Fund assets exceeded the 20% threshold on that date, saying "[t]he Company has determined to implement the Reallocation after October 19, 2012."

60.     The mandatory reallocation policy was formally implemented in Amendment Four to the Plan, executed by the Company on June 14, 2012 ("Amendment Four"). Amendment Four dictated that the Independent Fiduciary "shall" execute a forced sale of Fund shares in excess of 20% of each Individual Account after the close of trading on October 19, 2012, and consequently cause the Fund itself to liquidate shares of Dell common stock to reflect these forced sales. Amendment Four provided that this forced reallocation was a one-time event and "shall not apply to Participant Account Balances subsequent to" the date of the forced sale. Amendment Four also provided that the Independent Fiduciary would have "the exclusive fiduciary responsibility" to determine whether to implement the forced sale *prior* to October 19, 2012, but did not provide any discretion to delay or postpone the sale past the deadline established by Amendment Four.

**B.     Michael Dell Proposes to Take the Company Private**

61.     In the meantime, Michael Dell and a number of investors and advisors began exploring the possibility of a private buyout of the Company in the late spring and early summer of 2012. According to published reports, Michael Dell was approached by Southeastern Asset Management (at the time the Company's biggest outside investor) on June 15, 2012, about the possibility of taking the Company private, and in July and August 2012 Michael Dell conducted discussions with Silver Lake Partners and at least one other private equity firm shortly thereafter about a going-private transaction. Mr. Dell formally notified the Company's lead independent director about the proposals on August 14, 2012, and the Company's Board formed a special committee of independent directors (the "Special Committee") six days later to consider the matter. As due diligence progressed in the months that followed, the Company, its directors, and upper management were well aware of and deeply engaged in discussions and financial

projections related to the privatization proposal advanced by Michael Dell and his financial backers. Among these many intensive discussions were meetings on September 17, 2012, September 21, 2012, September 23, 2012, organized by the Special Committee and Dell's buyout advisors regarding the buyout and the Company financial projections. These meetings were attended by Dell senior management, including Janet Wright, the Company's Vice President – Corporate, Securities and Finance Counsel and Assistant Secretary. Ms. Wright also served as the lead member of the Benefits Administration Committee.

62.     By early October 2012, the privatization discussions had progressed to the point where the Company was prepared to request formal proposals from Silver Lake and the other private equity investor (referred to as Sponsor A), and on October 16 the Special Committee requested that the investors submit acquisition proposals no later than October 23, 2012. Both Silver Lake and Sponsor A submitted preliminary acquisition proposals on that date.

63.     On information and belief, the valuations being discussed within the Company and by the outside investors were well in excess of the then-prevailing market price for Dell common stock, which was trading around $9.50 per share in mid-October 2012. The October 23, 2012, formal proposals from Silver Lake and Sponsor A were between $11.22 and $13 per share, and Silver Lake subsequently raised its bid offer at least four times, eventually making a formal offer to the Special Committee to take the Company private at $13.65 per share.

64.     On January 14, 2013, Bloomberg News reported that the Company was in talks with several financial sponsors regarding a going private transaction. The market price of the Company's common stock rose approximately 13% that day, closing at $12.29 per share. The Company's share price rose steadily in the weeks that followed when word of the transaction

17

began to leak out, and by February 4, 2013, the Company's share price had risen to $13.27 per share.

65.     The offer from Silver Lake at $13.65 per share was accepted by the Company's Board and announced to the public on February 5, 2013. The buyout group subsequently made a conditional offer of $13.75 per share in a bid to attract additional shareholder support, and on August 2, 2013, the Company announced a revised agreement under which the buyout partners would pay $13.75 per share, plus a special 13-cent dividend and a guarantee that the Company's regular quarterly 8-cent dividend would be paid for the third quarter. The Company's share price traded in a range between $12 and $15 per share during that time.

66.     The full benefit of these higher share prices and the special dividend would not be shared by those forced out under the Company's mandatory reallocation policy, however. Despite having active knowledge of the pending buyout discussions at valuations well in excess of the then-prevailing market price for Dell shares, and in many cases having actively participated in those discussions, neither the Company nor any other ERISA fiduciary took any steps to halt or postpone the mandatory reallocation policy it planned to force upon holders of Fund shares which constituted in excess of 20% of their Individual Accounts. After the close of trading on October 19, 2012, while the Defendants sat in possession of material nonpublic information about the pending buyout discussions—information which reflected share valuations well in excess of the prevailing market price and which Defendants knew would have dramatically increased the market value of the "reallocated" shares—the Company forced participants in its own Plan to sell their shares in the Fund for roughly $9.50 per share.[3]

---

[3] Plaintiff further notes that selling a large number of shares into the market at the same time would have a tendency to further depress the share price. One consequence of a depressed share price would be to increase the spread between the market price and a buyout offer, thus making the buyout offer more attractive.

67.     Under these circumstances the Defendants' ERISA fiduciary duties required postponing or cancelling the mandatory reallocation deadline. Defendants knew that the pending buyout offer would come at a significant premium to the then-current share price. Postponing the deadline would have allowed the valuations discussed in the pending buyout negotiations to be reflected in an increased share price, thus increasing the value of the Fund shares subject to the mandatory reallocation. And under the circumstances, cancelling the deadline altogether would still have satisfied the reallocation's underlying policy rationale of "reducing investment levels" in the Fund, insofar as the Fund itself would have been liquidated upon the consummation of a successful buyout transaction. Defendants' failure or refusal to take these actions, or otherwise ensure that the Class Members' rights and interests were protected, violated their duties under ERISA as set forth below.

C.    **Plaintiff Carl Camera's Investments in the Dell 401(k) Plan**

68.     Camera is a participant in the Plan. As part of his individual retirement portfolio he hold Units in the Fund. As of mid-October 2012, Camera held approximately 209 Units in the Fund, representing a value of approximately $10,536.00. At that time the value of his total Individual Account stood at $13,868.39, meaning that his Fund shares represented approximately 76% of the value of his total Individual Account holdings.

69.     Camera's holdings in the Fund were thus subject to the mandatory reallocation. Camera did not request the reallocation of his assets, and in fact affirmatively opposed both the 20% limitation in Fund assets and the October 2012 mandatory reallocation in multiple communications with Plan administrators in June 2012. Camera's request for reversal of or exemption from the mandatory reallocation policy was rejected, and on October 23, 2012, the operation of the reallocation policy caused the Plan and/or its fiduciaries to sell approximately

155 of his 209 Units in the Fund, reducing the percentage of Fund Units in Camera's Individual Account from 76% to 19.8%.

## COUNT I:

### Imprudent Investment (Against the Company and the Committee Defendants)

70.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

71.     Dell and the Committee Defendants, as a result of their positions with or in relation to Dell, knew or should have known of the undisclosed material information alleged above and knew or should have known that the market price of Fund shares did not reflect fair value and would rise dramatically upon public disclosure of the information. Dell and the Committee Defendants were also aware that the mandatory reallocation policy described by Amendment Four would cause the Plan to sell Units of the Fund before disclosure of the information and/or before any contemplated buyout was finalized and executed. Under those circumstances, mandating a sale of Fund Units pursuant to Amendment Four was imprudent.

72.     Despite the fact that they knew or should have known that selling Fund Units was not prudent at that time, Dell and the Committee Defendants breached their fiduciary duties by: (a) requiring the Plan to sell shares of the Fund by an artificial deadline; (b) failing to postpone or cancel the artificial deadline; and (c) failing to countermand or withdraw the instructions given to the Independent Fiduciary concerning the implementation of the mandatory reallocation.

73.     In addition, to the extent that Dell and the Committee Defendants possessed material nonpublic information, they should not have prevented Participants from purchasing additional shares in the Fund, even if their exposure to the Fund exceeded 20% of their Individual Account value. Under the circumstances they should have suspended the operation of

Section 4.2 of the Plan altogether. Had they done so, Plan Participants would have had the ability to preserve and increase their holdings in the Fund and enjoy the share price benefits represented by the buyout offer.

74.     As a consequence of these breaches, the Plan suffered losses, as did Camera and all those similarly situated.

75.     Each of these Defendants is liable for the acts of the other Defendants as a co-fiduciary. Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them.

76.     Dell and the Committee Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under ERISA § 409(a) and § 502(a)(2) and 29 U.S.C. § 1109 and § 1132.

## COUNT II:

### Failure to Appoint and Monitor (Against the Director Defendants)

77.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

78.     As alleged above, the Director Defendants assumed a duty to appoint and monitor the performance of the Committee. Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment, holding, and disposal of Plan assets, and must take prompt and effective action to protect the Plan and Participants when they are not.

79.    A monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in his/her possession that he/she knows, or reasonably should know, that the monitored fiduciaries must have in order to prudently manage the Plan and Plan assets, or that may have an extreme impact on the Plan and the fiduciaries' investment decisions regarding the Plan.

80.    Here, the Director Defendants breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the mandatory reallocation contemplated by Amendment Four, to monitor their appointees and to sufficiently evaluate their performance, or to have any system in place for doing so, and standing idly by as the mandatory reallocation was imposed and enforced at a time when the Director Defendants knew the Company's stock was undervalued and would soon see a dramatic increase upon disclosure of the buyout negotiations; (b) failing to ensure that the monitored fiduciaries appreciated the impact of the buyout negotiations on the value of the Plan's investment in the Fund; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan's assets; and (d) failing to take steps to countermand Amendments One and Four to the Plan so as to remove the purchase restrictions and forced sales required by Section 4.2 as amended, despite knowledge of the pending buyout offer and the higher share prices which would inevitably ensue upon public disclosure of the discussions and/or upon consummation of the buyout transaction itself. If the Director Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plan would have been minimized or avoided.

81.     As a consequence of these breaches, the Plan suffered losses, as did Camera and all those similarly situated.

82.     Each of these Defendants is liable for the acts of the other Defendants as a co-fiduciary. Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them.

83.     Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under ERISA § 409 (a) and § 502 (a)(2) and 29 U.S.C. §§ 1109 and 1132.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for:

A.      A determination that this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative and determining that Plaintiff's counsel satisfies the prerequisites of Rule 23(g);

B.      A Declaration that Defendants breached ERISA fiduciary duties owed to the Plan and Participants as set forth in this Complaint;

C.      An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets;

D.      Actual damages paid to the Plan in the amount of any losses the Plan suffered;

E.      An Order allocating the Plan's recoveries to the accounts of all Participants who were subject to the mandatory reallocation pursuant to Section 4.2 of the Plan, as amended;

F.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g); and

G.      An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine.


Date: October 2, 2013


Respectfully submitted,

**EDWARDS LAW**
Haehnel Building
1101 E. 11th St.
Austin, Texas 78702
Tel.  512-623-7727
Fax.  512-623-7729

By:     /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406

**AND**

**THE SINGLEY LAW FIRM, PLLC**
4131 Spicewood Springs Rd., Ste. O-3
Austin, Texas 78759
Tel. (512) 334-4302
Fax. (512) 727-3365

By:     /s/ MichaelSingley
        MICHAEL SINGLEY
        State Bar No. 00794642

**ATTORNEYS FOR PLAINTIFF**