IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUN 17 AM 11: 44
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
   DEPUTY

**CARL CAMERA,**
                Plaintiff,

-vs-                                          Case No. A-13-CA-876-SS

**DELL INC.; SHANTANU NARAYAN; GERALD J. KLEISTERLEE; SAMUEL A. GUESS; JANET WRIGHT; and GARY BISCHOPING,**
                Defendants.

## **ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [#29], Plaintiff Carl Camera's Response [#38], and Defendants' Reply [#39]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to dismiss.

### Background

The Court previously recounted the facts underlying this lawsuit in its order granting Defendants' first motion to dismiss. *See* Order of Feb. 26, 2014 [#26]. In short, Camera, a Dell employee, alleges Dell and certain of its board members improperly allowed Dell's independent fiduciary (Evercore Trust) to go forward with a forced sale of employee-held Dell stock in 2012 in an effort to force Dell employees to diversify the holdings in their retirement accounts. Dell concocted this plan in 2010 in response to a lawsuit alleging Dell had allowed its employees to invest too heavily in Dell stock in violation of ERISA. Carrying out the plan in 2012 was wrongful, Camera

alleges, because Dell was at the time actively considering a going-private transaction which could have been anticipated to bring in an above-market-price offer to buyout all Dell stock. By forcibly reallocating employees' shares over a certain percentage, Camera contends Dell prevented those employees from fully benefitting from the going-private transaction ultimately completed in 2013.[1]

Camera's specific claims Defendants violated their fiduciary duty of prudence, and alleged Dell's directors also violated their fiduciary duty to monitor the Special Committee formed to evaluate the going-private transaction. This Court granted Defendants' motion to dismiss those claims. Specifically, this Court held the facts alleged in the First Amended Complaint did not state a plausible "imprudent investment" claim because the going-private transaction was not so certain an outcome at the time of the forced reallocation to require Dell to force its independent fiduciary to countermand the express requirements of Dell's ERISA plan, which had been announced in 2010 and formally adopted in 2012. *Id.* at 5–9. The Court also dismissed the failure-to-monitor claim because it was derivative of the imprudent-investment claim. *Id.* at 9. The Court dismissed without prejudice and granted Camera twenty days to file a Second Amended Complaint.

Camera accepted that invitation and repleaded. The Second Amended Complaint adds a variety of factual allegations not present in the prior pleadings. For example, Camera has bolstered his allegations concerning Michael Dell's desire to take Dell private and his knowledge such a transaction was possible as early as July 2012. 2d Am. Compl. [#27] ¶¶ 5–7; *see also id.* ¶¶ 58–64 (alleging Michael Dell and Dell's board discussed and planned a going-private transaction beginning

---

[1] Dell's amended plan capped participant investment in Dell stock at 20% of their plan assets. Any amount over 20% would be sold by way of the forced reallocation. Accordingly, any plan participant who held Dell stock through the buyout benefitted from the buyout. The issue in this suit is whether plan participants who had excess shares on the date of the forced reallocation should have been allowed to benefit even more by retaining their excess shares until the going private transaction was completed.

in November 2010, and Michael Dell acquired a significant number of shares of Dell stock between November 2010 and May 2012). Camera contends Michael Dell was "dedicated to closing the transaction" and knew it was more likely than not that any deal would close at a price "significantly above prevailing market value." *Id.* ¶¶ 10–11; *see also id.* ¶¶ 70–81 (detailing Michael Dell's personal commitment to the transaction and his intent to move forward with the deal at the highest price the two prospective buyers were willing to offer). In addition to these factual allegations, the Second Amended Complaint adds an additional count alleging Dell and its directors are liable as co-fiduciaries for any actions taken by Dell's appointed independent fiduciary, Evercore. *Id.* ¶¶ 96–103.

Defendants now move to dismiss a second time, arguing these additional factual allegations do not cure the central deficiencies in the First Amended Complaint, and still fail to plead any plausible claim.

## Analysis

### I.  Motion to Dismiss—Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must

establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

This is fundamentally the same lawsuit the Court was presented with in the previous motion to dismiss, so the Court will endeavor to avoid belaboring the discussion by repeating its prior order in full. Instead, the Court focuses primarily on those aspects of the pleadings Camera believes alter the calculus and render previously implausible claims plausible.

The focus of Camera's Second Amended Complaint is still the allegation Dell and the members of Dell's Special Committee—the committee formed to analyze the going-private transaction—violated their duty of prudence. Under this umbrella, Camera's first claim is still that this duty was breached when the ERISA plan was amended to require forcible reallocation of excess

plan-participant shares "by an artificial deadline." 2d Am. Compl. [#27] ¶ 90. The Court previously held Camera had failed to allege facts showing either the announcement of this policy in 2010 or the formalizing of this policy, including the choice of a date certain (October 19, 2012), in May 2012 was imprudent. *See* Order of Feb. 26, 2014 [#26], at 5 ("Camera has pleaded no facts suggesting a prudent fiduciary would not have chosen 2012, or October 2012, at the times these decisions were made."). None of the facts added in the Second Amended Complaint change this outcome. Camera still has not alleged any facts suggesting the announcement of the plan in early 2010, prior to even the earliest alleged internal plans to take Dell private, was imprudent at the time. Nor has Camera alleged any facts suggesting the choice of the October 19, 2012 deadline in May 2012 was imprudent. Camera does not allege any of the Defendants knew in May that a going-private transaction would close shortly after October 19, and thus chose the date specifically to deprive plan participants of the benefit of the buyout. There is simply no basis for concluding these particular acts violated the duty of prudence.

Camera's remaining three theories—the two previously asserted, plus one new theory added in the Second Amended Complaint—allege the Defendants violated the duty of prudence by failing to stop the forced reallocation or otherwise prevent Evercore from carrying out the reallocation. The Court previously found these theories unsupported by the law, particularly because Camera's theories, if true, would force Dell into a no-win situation:

> If Defendants proceed with the reallocation, they will be sued for breaching their fiduciary duties and failing to override the Plan's mandate. If Defendants countermand the Plan's express directive to conduct the reallocation, they will be sued for breaching their fiduciary duties and overriding the Plan's mandate, and likely sued by the participants who voluntarily divested between 2010 and October 2012 in reliance on Dell's prior notice of the reallocation deadline. *See Kirschbaum*, 526 F.3d at 256 & n.13 (suggesting "a fiduciary who scraps plan requirements is just

> as apt to be sued as if he had enforced them" (internal quotation marks omitted)). ERISA does not create such a trap, at least not on these facts.

*Id.* at 6. Second, the Court held the Defendants' alleged knowledge did not obligate them to countermand the ERISA plan's mandate requiring the reallocation to occur on October 19, 2012:

> Defendants, in their role as fiduciaries, simply were not required to bet the plan participants' assets on the likelihood of a going-private transaction occurring at some unknown point in the future. *Cf. Kirschbaum*, 526 F.3d at 256 ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from [ERISA] plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest.").

*Id.* at 7. Camera's new allegations do not change these outcomes, either, and the Court addresses them in reverse order.

First, Camera's allegations do not show the duty of prudence imposed on these Defendants any obligation to countermand the ERISA plan based on their alleged knowledge in October 2012. Much of Camera's briefing focuses on the idea the perceived likelihood and magnitude of the going-private transaction made the deal "material" under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and therefore the Defendants were required to include the information about the possible buyout in their evaluation of the reallocation decision.[2] But as Defendants highlight in their Reply, the relevant inquiry is not whether Defendants had to *consider* the possibility of the buyout, but whether their decision to follow the ERISA plan violated the duty of prudence. Even assuming the Defendants possessed material information about Michael Dell's planned going-private transaction in October 2012, they violate the duty of prudence only if Camera can present "persuasive and analytically

---

[2] *Basic* and its progeny, including the cases cited by Camera in his Response, concern materiality in the securities-fraud context. *See Basic*, 485 U.S. at 226–27; *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 179 (2d Cir. 2001); *SEC v. Maio*, 51 F.3d 623, 626–27 (7th Cir. 1995).

-6-

rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound" to countermand the ERISA plan. *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008).[3]

Camera's Second Amended Complaint does not contain such facts. As the Fifth Circuit has instructed, Defendants' decisions in their roles as fiduciaries "are not to be judged with the benefit of hindsight, but from the facts known to them at the time." *Kopp v. Klein*, 722 F.3d 327, 341 (5th Cir. 2013). Accepting Camera's allegations as true and drawing even the most generous of inferences in his favor,[4] the members of the Special Committee "knew at the time of the [reallocation], on October 19, 2012, that the private buyout transaction was more likely than not to close at a price significantly above the then-prevailing market price for the shares, and above any 'control premium,' as indeed occurred." 2d Am. Compl. [#27] ¶ 80. By Camera's own admission, there was therefore a significant chance—perhaps as high as 49%—the buyout would not go through. The Special Committee had no knowledge of when such a deal might be completed, and initial offers had not yet been received. On the other side of this equation, the Special Committee had a reallocation plan, announced in 2010 and formally adopted as part of Dell's ERISA plan in May 2012, *mandating*

---

[3] Similarly, *Kirschbaum* recognized some *possibility* of injury to the plan participants is insufficient to compel the fiduciaries to disobey the plan. 526 F.3d at 256 ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from [ERISA] plan provisions."). Camera's allegations at most show the Defendants here may have been aware of circumstances that might result in a better outcome for over-concentrated plan participants.

[4] For example, Camera's Second Amended Complaint focuses almost exclusively on Michael Dell's individual desire to complete the going-private transaction. As a result, the pleading is essentially silent as to the Special Committee's willingness to approve a going-private transaction at any price, and about the shareholders' willingness to do the same. The consent of both groups would be necessary for the deal to move forward. In another example, the Second Amended Complaint provides no factual basis for inferring the Special Committee members knew about Michael Dell's "willingness to match the highest price [either identified potential buyer] would offer." 2d Am. Compl. [#27] ¶ 77. Camera admits Michael Dell did not tell the potential buyers he was "prepared to participate at the highest price they were willing to pay" until November 2012—after the reallocation—and pleads no facts suggesting the Special Committee members had any basis for learning of Michael Dell's state of mind at an earlier date. *Id.* ¶ 76.

excess shares be sold by October 19, 2012. As the Court previously held, these facts are insufficient to show reasonable fiduciaries would have felt themselves bound to countermand the ERISA plan on the belief that going through with the reallocation would violate ERISA. *See* 29 U.S.C. § 1104(a)(1)(D) (fiduciary must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]"); *see also* Order of Feb. 26, 2014 [#26], at 7 ("Defendants, in their role as fiduciaries, simply were not required to bet the plan participants' assets on the likelihood of a going-private transaction occurring at some unknown point in the future.").

Second, the Court's conclusion remains buttressed by the no-win situation Camera's theory of the law would foist upon ERISA fiduciaries. Camera contends the Defendants were free to simply cancel the reallocation because they would be protected from any subsequent lawsuit by a presumption they acted prudently. *See Kirschbaum*, 526 F.3d at 254 (discussing the so-called "*Moench* presumption," named for *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995)). But the presumption of prudence is designed to protect those investors who do what the ERISA plan tells them to do. *See id.* at 253–56. The Court is aware of no authority holding fiduciaries are presumed to have acted prudently in disobeying the express commands of an ERISA plan. *Moench* intentionally left open the question whether a fiduciary could even breach a duty by simply doing what the plan requires him to do, which suggests the inverse situation is dangerous ground for fiduciaries. *See id.* at 255 & n.10

Finally, important policy considerations illustrate why Camera's theories of liability cannot accurately reflect the state of the law. As the Court previously explained, Camera would impose liability on the defendant fiduciaries because they did not use their insider knowledge of Dell's intent

-8-

to go private to improve returns on plan participants' shares—shares those participants could retain only in violation of the ERISA plan's formal cap on company stock ownership. This outcome is wholly inconsistent with the spirit of the securities laws; it is, in essence, insider trading on a time delay. *See id.* at 256 ("Fiduciaries may not trade for the benefit of plan participants based on material information to which the general shareholding public has been denied access.").

In response, Camera cites a variety of district court decisions for the proposition that "the requirements of the securities laws will not insulate or excuse a Defendant from a breach of fiduciary duty under ERISA," but those cases dealt with vastly different scenarios. Pl.'s Resp. [#38], at 19. A fiduciary certainly should not join a fraudulent scheme to withhold material information from the investing public. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 565 (S.D. Tex. 2003). But the fiduciaries here are not accused of withholding information from the public. Instead, they are being faulted for not using their superior knowledge of Dell's internal plans to help the plan participants take unfair advantage of the market. To accomplish that goal, the fiduciaries would have had to countermand the plan's requirements and allow the plan participants to hold onto shares they could not by the terms of the ERISA plan hold until they could sell them for an above-market price. *See Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Since ERISA fiduciaries have no duty to disclose inside information to plan-participants so that participants may act on it, Plaintiffs' argument that the Benefit Committee Defendants should have been privy to inside information so that *they* could act on it on behalf of plan-participants is simply not persuasive."); *In re Enron Corp.*, 284 F. Supp. 2d at 565 ("At the same time, a fiduciary's duty of loyalty should also not be construed to require him to enable and encourage plan participants to violate the law . . . . Nor would selective disclosure of [the company's financial condition] by the

fiduciary to plan participants protect any lawful financial interests of the plan participants and beneficiaries."). Any fiduciary who behaves in such a way deserves to be sued by the other plan participants who were foolish enough to take the fiduciary at his word and therefore voluntarily divested between 2010 and 2012 to avoid the forced reallocation.

Finally, because Camera has still failed to plead a plausible breach of fiduciary duty claim against any Defendant, his derivative claims also fail. The Fifth Circuit has recognized "a claim for breach of fiduciary duty to appoint, inform, and monitor plan fiduciaries is a derivative claim," and therefore requires an underlying breach of fiduciary duty to be actionable. *Kopp*, 722 F.3d at 344 (citing *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008) (Sparks, J.)). Camera's new claim asserts "co-fiduciary liability" for the conduct of Evercore. Evercore has not been sued and is not accused of violating any fiduciary duties in this case. Any "co-fiduciary liability" claims must be wholly derivative as well, and therefore share the other claims' fate.

### Conclusion

Despite Camera's additional factual allegations, the Court remains convinced these facts do not show the defendant fiduciaries were required "to reverse a two-year course, countermand express Plan terms, and call off the reallocation" in light of a possible going-private transaction. Order of Feb. 26, 2014 [#26], at 7. Camera has now filed three versions of his complaint in this Court and two motions to dismiss have been granted. Camera has not suggested there are any additional facts he could plead in a Third Amended Complaint which might turn the tide and state a plausible claim against any of these defendants. The Court concludes further leave to amend would be futile, and it is time for this case to be concluded or appealed.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [#29] is GRANTED;

IT IS FINALLY ORDERED that all claims brought by Plaintiff Carl Camera in the above-styled cause are DISMISSED WITH PREJUDICE.

SIGNED this the 17th day of June 2014.

                                                  SAM SPARKS  
                                                  UNITED STATES DISTRICT JUDGE